UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HYLAS YACHTS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>T3 VISTAS, LLC, and RICHARD STROTHER,<br><br>Defendants | Docket Number<br><br>1:12-cv-10468 |

**AFFIDAVIT OF KYLE JACHNEY IN SUPPORT OF THE MOTION OF THE PLAINTIFF FOR PRELIMINARY INJUNCTION RESTRAINING THE DEFENDANTS FROM DISSIPATING ASSETS OR, IN THE ALTERNATIVE, REQUIRING THE DEFENDANTS TO POST A BOND WITH SURETIES**

I, Kyle Jachney, on personal knowledge, information, and belief, and under oath, do state and depose as follows:

1. I am the Vice President of Hylas Yachts, Inc. ("Hylas").

2. Richard Strother ("Strother") is an individual and the sole owner of T3 Vistas, LLC ("T3"), a Nevada limited liability company.

3. In or around the spring and summer of 2008, Strother was interested in purchasing a yacht from Hylas.

4. The vessel that Strother wanted to purchase was known as Hylas 70 Hull Number 7 ("the Yacht").

5. Attached as Exhibit 1 is a true and accurate copy of an E-mail exchange between me Strother sent on October 22 and 23, 2012.

6. Attached as Exhibit 2 is a true and accurate copy of the convictions of Strother.

7. Attached as Exhibit 3 is a true and accurate copy of a boat loan application filled out by T3 and Strother.

1

8. Attached as <u>Exhibit 4</u> is a true and accurate copy of E-mails between Melanie Jolles and Strother regarding attempts to secure financing in June 2011.

9. Attached as <u>Exhibit 5</u> are true and accurate copies of the payments that Strother made for the Yacht.

10. Hylas did not know at the time that Strother was a convicted felon. <u>Exhibit 2</u>.

11. Hylas did not know at the time and former attorney who had been suspended by the bar of Connecticut.

12. While Strother was ***personally*** seeking the financing source for the purchase of the Yacht and to secure the same with his own personal resources and assets, he established T3 as a separate entity to purchase and hold title to the Yacht. <u>Exhibit 3</u>.

13. On August 1, 2008, Hylas and T3 entered into an agreement ("the P&S") to purchase the Yacht for $1,630,000.

14. Strother signed the Agreement on behalf of T3.

15. Strother personally made all of the payments for the Yacht out of his personal accounts. He either transferred those funds to Hylas directly from his personal accounts or transferred the money to T3 and then from that account to Hylas. <u>Exhibit 5</u>.

16. Hylas delivered the Yacht to the boatyard in Fort Lauderdale as the P&S required.

17. However, T3 never paid the outstanding balance and defaulted in November 2009.

18. Strother personally was attempting to secure financing as late as October 2011. <u>Exhibit 4</u>.

19. In December 2011, Hylas entered into an agreement with a third party to purchase the Yacht.

20. Around that same time, Strother learned that the Yacht was under agreement f.

21. Even though T3 was in breach of the P&S and *approximately two and one half years later*, on February 17, 2012, the Defendants filed a UCC financing statement ("UCC-1") with the Massachusetts Secretary of State, UCC Filing Number 201293903030.

22. This financing statement alleged that the P&S created a security interest in both Strother and T3 in the Yacht.

23. On March 7, 2012, the Defendants amended the UCC-1 by filing a UCC-3 with the Massachusetts Secretary of State, UCC Filing Number 201294284750.

24. The UCC-3 alleged that Strother himself had a security interest in the Yacht.

25. Strother also sent a "Notice of Lien" letter to Hylas and the purchaser in which he threatened to arrest the Yacht.

26. The Defendants' actions imperiled the sale of the Yacht, as the purchaser was understandably unwilling to purchase the Yacht if it was encumbered by a perfected, senior lien and under threat of arrest.

27. In order to salvage the sale, Hylas brought this suit and obtained the grant of a preliminary injunction dissolving the UCC Financing Statements.

28. When I received notice of the filing of the UCC filing statements and Strother's attempts to arrest the Yacht in February 2012, I was shocked that Strother had taken this step.

29. I called Strother to understand why he claimed an interest in the Yacht *after T3 had breached its obligation to purchase the yacht.*

30. I told Strother that if he did not dissolve the UCC filing, Hylas would have no choice but to bring suit against Strother and T3.

31. In response, Strother said that he had set up an assetless limited liability company and Hylas would never be able to collect on any judgment it would ever obtain against Strother. See Exhibit 6.

32. Strother also informed me that would set up a series of companies and Hylas would never figure out where his money was hidden.

33. He told me he would put his money beyond reach if Hylas brought suit.

34. Strother promised me that Hylas would never collect anything from him.

35. Hylas has brought numerous counts in the complaint against Strother in his individual capacity.

36. On October 23, 2012, Strother sent an E-mail to Hylas threatening to post defamatory information about Hylas to the Internet:

> "I feel it is important to inform the world via internet [sic] about these litigations and the positions taken by the parties, therefore I commissioned a website entitled www.hylaslitigation.org."
>
> "Click on it, it contains all public records of Hylas litigations known to date plus a blog. Although I was hoping not to put the website out to the public, I think it is important that brokers and buyers see how Hylas deals with problems these days, and that Hylas is potentially subject to a $2,850,000 verdict times three, or $8,550,000; and a verdict from T3 Vistas, LLC, for $469.758.55 times three, or $1,409,275.65".

Exhibit 1.

37. I immediately called Strother to address these threats, and during that call, Strother again told me that I should settle the case on terms most favorable to Strother as Hylas would be unable to ever collect from him because he would hide his money and render himself judgment-proof.

38. Soon thereafter, Strother told Hylas in writing that he would seek to avoid collection of any judgment. On October 23, 2012, Strother E-mailed Hylas and said that even "If

4

your wildest dreams brought [sic] fruit, and you were able to get some surplus judgment against T3 Vistas, LLC, in the Mass litigation, it could not be collected against me personally under Nevada Law." Exhibit 1.

39. Strother made clear to me that as a lawyer, he could continue to hide his assets and Hylas would ultimately be frustrated and would never collect any money from him ever.

40. I understood this statement to be a reference the promises that Strother had made in the recent phone call—that he would hide his assets and that Hylas would never be able to collect on a judgment.

41. Upon information and belief, Strother has a net worth of approximately $8 million dollars. See Exhibit 3.

42. Strother's assets are in accounts at Morgan Stanley. They are in his name and in the name of different businesses that he owns. See Exhibit 3.

43. Unless this Court grants a restraint against the further dissipation and alienation of these assets and other such assets standing in the name of Rick Strother, Hylas will be continuously frustrated from collecting on any judgment, as Strother will place the assets beyond Hylas's reach as a judgment creditor.

44. Stother represented that his personal assets were available as collateral for the purchase of the Yacht. Exhibit 3.

45. Attached as Exhibit 6 is a true and accurate copy of the June 2012 bank account of T3 showing a balance of $0.61.

46. Exhibit 7 is a true and accurate summary of Hylas's damages showing a total damage of approximately $1 million. See Exhibit 7. With interest, this is approximately $1.3 million.

Submitted this day under the pains and penalties of perjury,

_____
Kyle Jachney, Vice President
Hylas Yachts, Inc.

Date: September 5, 2013