**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

IN RE:

Richard Tuckerman Strother                    Case No. 14-16671-PGF
                                              Chapter 13
Debtor.

_____/

Hylas Yachts, INC..
          *Plaintiff,*

v.                                            Adv. No.  14-01318-PGF

T3 Vistas, LLC, and
Richard Strother
          *Defendants.*

T3 Vistas, LLC, and
Richard Strother
          *Counterclaimants*
v.

Hylas Yachts, INC.
          *Defendant.*

_____

## DEBTOR RICHARD STROTHER'S OBJECTIONS TO AND MOTION TO QUASH NOTICE OF 2004 EXAMINATION, MOTION FOR PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW

Debtor and Debtor-in-possession Richard Strother ("Debtor Strother") objects to and

moves this Honorable Court, pursuant to Rules 2004 and 9016 of the Federal Rules of

Bankruptcy Procedure ("Bankruptcy Rules") and Rules 2004-1(c) of the Local Rules of the

United States Bankruptcy Court for the Southern District of Florida ("Local Rules"), to

quash the Notice for Rule 2004 Examination Duces Tecum ("Notice") issued by

1

Plaintiff-Counter Defendant Hylas Yachts, Inc. ("Hylas") in the above captioned Adversary Proceeding ( the "Pending Adversary Proceeding') and for entry of a protective order prohibiting Hylas from enforcing this Notice. In support of this motion, the Debtor states and files the incorporated memorandum of law as follows:

## INTRODUCTION

## I.   PENDING ADVERSARY PROCEEDING BACKGROUND

1.     On or about August 1, 2008, the T3 Vistas, LLC ("T3") a Limited Liability Company organized to be in the yacht charter business, and Hylas a dealer of yachts built in Taiwan, entered into a contract to purchase a Yacht for $1.63 million plus the costs of optional equipment selected by the T3.

2.     The Sales Agreement was a "Standard Hylas Contract", drafted by Hylas, and was a contract for the Sale of Goods under Uniform Commercial Code Article 2 covering all transactions for the sale of goods other than securities and leases.

3.     Paragraph 1of the Sales Agreement provided a definition of what constituted the "Yacht" to be built and what standard equipment to be included in the base price of the "Yacht".

4.     Paragraph 2 of the Sales Agreement provided for delivery of a fully completed Yacht "F.O.B." (Free on Board) which under the Uniform Commercial Code determined the formalities of how tender to Buyer and acceptance by Buyer of the goods was to be made and how title to such goods was to be passed to the Buyer, T3.

5.     Paragraph 3 of the Sales Agreement determined a payment schedule. Contained in paragraph 3(c) was an ambiguous term intentionally inserted by Hylas that created a de facto misunderstanding as to what conforming goods were to be delivered, what constituted "delivery" of such conforming goods, and when payment was due for such conforming goods.

2

6.      Paragraph 7 of the Sales Agreement gave a security interest to Buyer and required Hylas to file on or shortly after August 1, 2008, a UCC-1 financing statement evidencing and perfecting Buyer's security Interest in the Yacht.

7.      T3 timely paid the 20% deposit of $326,000 as required by the Sales Agreement.

8.      A hull, not a "ready to sail" yacht, was shipped from a factory in Taiwan to Fort Lauderdale, Florida in late October, 2009. The Mast, Rigging, Sails, and other inventory which were part of the standard equipment list per the Sales Agreement, were missing.

9.      T3 was unwilling to accept the hull without the mast, rigging and sails and agreed to inventory, and was unwilling to make further payment.

10.     Hylas then requested that the Debtor, who was Manager of T3, to advance $125,000 purchase the mast and rigging for the Yacht for its completion in order to market it for sale, whereupon Debtor would recoup the $125,000, and T3 would recoup some or all of its $326,000 deposit. At that time, Hylas represented that the base purchase price for its similar yachts had increased more than 35%, from $1,630,000 to $2,200,000.

11.     An oral agreement contract was entered into on November 2, 2009 whereby Debtor would advance $125,000 in order for Hylas to purchase the mast and rigging for the hull, install it for completion, commission it, and then market it for sale as a completed Yacht, whereupon Debtor would recoup the $125,000 and T3 would recoup some or all of its $326,000 deposit, and possibly make a profit.

12.     Pursuant to said agreement, the Debtor advanced an additional $125,000 to Hylas in exchange for a promise by Hylas to purchase the mast and rigging, install it on the hull, and put the completed "Yacht" on the open market for sale to the highest bidder.

13.     Hylas did not purchase the mast and rigging, install it on the hull, or put the

3

completed "Yacht" on the open market for sale.

14.     Thereafter, in February of 2012, Hylas contracted to sell the Yacht to a third party for $1.45 million without knowledge of T3 or Debtor or any notice to them.

15.     Subsequently, T3 and Debtor discovered that although Paragraph 7 of the Sales Agreement gave a security interest to T3 and required Hylas to file a UCC-1 financing statement evidencing and perfecting Buyer's security Interest in the Yacht, Hylas never did so.

16.     Thereafter, T3 filed the UCC-1 Statement in Massachusetts and 3 weeks later Debtor filed a UCC-3 Amendment to cover Debtor's outlays and missing property.

17.     On or about March 14, 2012, an Attorney named Jeffrey Baker telephoned and informed Debtor that a lawsuit had been mailed to Debtor. Debtor received in the mail a package containing a Summons from Hylas Yachts, LLC, on information and belief, a fictitious entity.

18.     The lawsuit alleged breach of contract of a Sales Agreement against T3 dated August 1, 2008. Eleven other additional counts were alleged in the First Amended Complaint (1)Breach of Covenant of Good Faith and Fair Dealing against T3; (2) Promissory Estoppel against T3 and Debtor ; (3) Quantum Meruit/Unjust Enrichment against T3 and Debtor; (4) Fraud against T3 and Debtor; (5) Slander of Title against T3 and Debtor, noncompliance with Article 9 of the UCC against T3 and Debtor; (6) Intentional Interference with Advantageous Contractual Relationship against T3 and Debtor; (7) Civil conspiracy/Joint liability against T3 and Debtor;  (8) Violation of Massachusetts consumer protection law against T3 and Debtor; (9) Preliminary and Permanent Injunctive Relief against T3 and Debtor; (10) Declaratory Judgment against T3 and Debtor; and (11) seeking to Pierce the Corporate Veil by alleging that T3 and Debtor were alter-egos.

4

19.     After lengthy and costly litigation, T3 Vistas, LLC filed for bankruptcy under Chapter 7 on or about January 24, 2014. (hereinafter referred to as "Debtor T3")

20.     Concurrently, the Trustee for Debtor T3 retained Bond Kaplan Group to represent Debtor T3 in the Massachusetts Action.

21.     Bond Kaplan Group thereafter withdrew from representation of Debtor Strother and Debtor Strother was left unrepresented in the Massachusetts Action.

22.     On or about February 26, 2014, the Massachusetts Court did not grant Hylas' Motion on Summary Judgment of breach of contract, ruling that it could not summarjly determine that Hylas delivered a "yacht" per the terms of the Sales Agreement in delivering a vessel that did not include a mast, rigging or sails, thus it was a triable issue of fact whether Hylas breached the Sales Agreement with Debtor T3.

23.     A Motion to Reconsider was subsequently filed with leave of the Massachusetts Court which was then taken under advisement by the Massachusetts Court, and Hylas thereafter filed but did not serve an Objection to the Motion to Reconsider.

24.     Thereafter, a Bench Trial was set, and Hylas simultaneously moved for and received an injunction and order requiring Debtor Strother to file certain documents ánd financial information with the Massachusetts Court under Court Seal.

25.     The Massachusetts Court ordered Debtor Strother to file all supporting documents and financial information from June 2011 to present, to be placed under Court seal until the case in chief could be determined.

26.     On or about March, 19, 2014, Debtor Strother complied with the Order and delivered all ordered documents and financial information under seal to the Massachusetts Court.

5

27. On March 24, 2014 Debtor Strother filed for bankruptcy under Chapter 13, Case No. 14-16671-EPK.

28. On March 26, 2014, the Massachusetts Action was removed to this Court pursuant to Fed. R. Bankr. P. 9027, Adv. No. 14-0138-EPK and is now the Pending Adversary Proceeding.

29. On or about April 8, 2014, the District Court in Massachusetts dismissed the Massachusetts Action.

30. This Court now had jurisdiction to determine this case under Fed. R. Bankr. P. 7001(10).

31. On April 15, 2014, Debtor's case number Case No. 14-16671-EPK was reassigned to The Honorable Judge Paul G. Hyman and was reassigned Case No. Case No. 14-16671-PGF.

32. On April 15, 2014, Debtor's Adversary Proceeding Case No. 14-0138-EPK was reassigned to The Honorable Judge Paul G. Hyman and was reassigned as Case No. 14-0138-PGF.

33. On or about May 7, 2014,this Court granted Hylas' Motion to Abstain and remand the Pending Adversary Proceeding back to the district court in Massachusetts.

34. On or about May 19th, Debtor Strother moved this Court to reconsider the order granting Hylas' Motion to Abstain and Remand.

35. On or about May 20,2014, the Claims Bar Date for claims against Debtor T3 passed and Hylas failed to file a proof of claim, thereby waiving all of its claims against Debtor T3.

36. On or about May 29th, a section 341 Meeting of the Creditors of Debtor Strother was held in which Hylas attended and was given the opportunity to ask questions and did ask questions with permission of the trustee until Hylas finished all of its questions.

6

## ARGUMENT

### I.    HYLAS CANNOT USE BANKRUPTCY RULE 2004 TO SEEK THE DISCOVERY BECAUSE THE PENDING ADVERSARY PROCEEDING CONSTITUTES A "PENDING PROCEEDING".

Even if Hylas had a valid claim against Debtor Strother, Hylas

would not be entitled to production of the requested documentation because of, inter

alia, the "pending proceeding" rule. *See In re Bennett Funding Group, Inc.*, 203 B.R. 24,

28 (Bankr. N.D.N.Y. 1996) ("The well recognized rule is that once an adversary proceeding

or contested matter has been commenced, discovery is made pursuant to the Fed. R. Bankr.

P. 7026 *et seq.,* rather than by a Fed. R. Bankr. P. 2004 examination"); *see also In re Drexel*

*Burnham Lambert Group, Inc.*, 123 B.R. 702, 711-12 (Bankr. S.D.N.Y. 1991) ("once an

adversary proceeding is in progress a creditor/party does not have a right to a 2004

examination"); *In re Dinubilo*, 177 B.R. 932, 940 (E.D. Ca. 1993) (recognizing that Rule 2004

is a "prelitigation device"); *First Financial Savings Assoc. v. Kipp (In re Kipp)*, 86 B.R. 490,

491 (Bankr. W.D. Tex. 1988) ("Rule 2004 may not be sued to circumvent the protections

offered under the discovery rules, 7026 to 7037.").

Hylas is already involved in a the Pending Adversary Proceeding and, in seeking to

obtain information pursuant to rule 2004, appears to be attempting to circumvent the more

cumbersome discovery rules governing that proceeding. The court should not allow this. See,

e.g., In Re 2435 Plainfield Ave., Inc., 223 B.R. at 456 quoting 6 NORTON BANKRUPTCY

LAW AND PRACTICE § 141:35 (2d ed. 1998)(noting that "courts will usually not allow a 2004

exam where an adversary proceeding is pending, because the party requesting the exam is likely

seeking to avoid the procedural safeguards of bankruptcy rules 7026–7037").

To the extent that Hylas believes the information requested by its rule 2004 Notice is relevant to its pending claims in that proceeding, Hylas is free to utilize the discovery tools available to it as a plaintiff therein. Thus ...a creditor, must look to Fed. R.Bankr.P. 7026 *et seq.* after an adversary proceeding is commenced for discovery as to both entities affected by the proceeding and issues addressed in the proceeding. *In re Buick*, 174 B.R. 299 306(Bankr. D.Colo.1994).

In the Pending Adversary Proceeding, Hylas has alleged breach of contract against Debtor T3 and because of an alleged alter-ego theory, purported to seek liability on the part of Debtor Strother, even though Hylas has waived liability claims against Debtor T3. That is the Pending Adversary Proceeding that has been ordered remanded to Massachusetts. Hylas seeks to use Rule 2004 to seek discovery directly related to that action from Debtor Strother. Rule 2004 examinations are inappropriate "where the party requesting the Rule 2004 examination could benefit their pending litigation outside of the bankruptcy court against the proposed Rule 2004 examinee." *In re Enron Corp.*, 281 B.R. 836, 842 (Bankr. S.D.N.Y. 2002); *Snyder v. Soc'y Bank*, 181 B.R. 40, 42 (S.D. Tex. 1994), *aff'd sub nom.*, See also: In re Snyder, 52 F.3d 1067 (5th Cir. 1995) (unpublished) (affirming bankruptcy and district court's denial of a Rule 2004 request based on the movant's "motive" to develop personal litigation claims and avoid stricter discovery rules).

Hylas cannot use Rule 2004 to circumvent the Rules of Civil Procedure and conduct discovery in the context of this proceeding.

8

## II.   THE NOTICE OF EXAMINATION SHOULD BE QUASHED AND A PROTECTIVE ORDER ISSUED BECAUSE HYLAS HAS FAILED TO DEMONSTRATE "GOOD CAUSE" FOR THE 2004 EXAMINATION.

Hylas's request for a Rule 2004 exam also should also be quashed because

Hylas has not demonstrated, and cannot demonstrate, "good cause" as to why it requires

access to the requested information. See, e.g., In re Wilcher, 56 B.R. 428, 434 (Bankr. N.D. Ill.

1985) ("[O]nce a motion to quash a subpoena is made, the examiner bears the burden of proving

that good cause exists for taking the requested discovery."); see also In re Silverman, 36 B.R.

254, 258 (Bankr. S.D.N.Y. 1984)(same). The burden of showing good cause is an affirmative

one that a proponent can meet only by showing that the materials are "necessary to establish the

movant's claim... or for the protection of its legitimate interests" or "that denial of production

would cause undue hardship or injustice." In re Youk-See, 450 B.R. 312, 320 (Bankr. D. Mass.

,2011) (internal citations omitted). That burden can not be satisfied merely by demonstrating that

the requested information is somehow relevant. See, e.g., In re Drexel Burnham Lambert Group,

Inc., 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) ("That documents meet the requirement of

relevance does not alone demonstrate that there is good cause for requiring their production.").

Here, Hylas cannot demonstrate that the requested information is necessary to establish

any claim or that the denial of the production of the requested information would lead to undue

hardship or injustice. As such, the Rule 2004 Notice should be quashed.

### III.   THE NOTICE OF EXAMINATION SHOULD BE QUASHED AND A PROTECTIVE ORDER ISSUED BECAUSE MUCH, IF NOT ALL, OF THE INFORMATION SOUGHT BY HYLAS IS ALREADY AVAILABLE TO IT

First, Hylas's Rule 2004 Notice should be quashed because much, if not all, of the information Hylas is requesting is already available to it. See, e.g., In re Symington, 209 B.R. 678, 688 (Bankr. D. Md. 1997)(noting Rule 2004 exam is not justified "where the information purportedly sought is either already well-known or within the would-be examiner's possession").

Not only has Hylas received extensive discovery in the Pending Adversary Proceeding, but the Massachusetts Court ordered Debtor Strother to file all relevant financial documents and financial information to be placed under Court seal. Hence, Hylas is either in possession of the information sought or can move the court for access to the sealed documents per court order they seek to circumvent and now try to obtain through a Rule 2004 examination.

As a threshold matter, Hylas is in substantially the same position as the Debtor with respect to the information necessary to establish the amount of Hylas's claim, if any – the Debtor T3 and Hylas were parties to the same contract, and Hylas surely can review the contract and engage in any arithmetical calculations to determine the amount of its claim without a Debtor Strother's assistance.

If Hylas disagrees with the Debtor's calculations in his Schedules, then it is entitled to assert its own calculations in the form of a proof of claim. If it does so, its claim will be deemed allowed pursuant to Section 502(a) of the Bankruptcy Code unless the Debtor or another party in interest objects. See 11 U.S.C. 502(a)("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects."). For now, though, an examination of the Debtor on claims issues is neither necessary nor warranted.

10

## V. THE NOTICE OF EXAMINATION SHOULD BE QUASHED AND A PROTECTIVE ORDER ISSUED BECAUSE THE RULE 2004 IS NOT A DEVICE TO PRE-LITIGATE CLAIMS.

A Rule 2004 Examination is not a device for parties with unfiled claims against the estate to pre-litigate claims issues or to develop potential defenses to claims objections. To permit otherwise would be to crush debtors and courts with massive administrative and financial burdens. See, e.g., In re Silverman, 36 B.R. 254, 259 (Bankr. S.D.N.Y. 1984) ("If the request for the examinations is in fact to prepare a defense to the trustee's pending action, then it is clear that Rule 205 [i.e., the precursor to Rule 2004] may not be utilized...").

Instead, Hylas should be required to pursue any discovery at the proper time and in the proper manner, consistent with the rules that govern all the other creditors of the Debtor's estate. If and when the Debtor objects to Hylas's claim, Hylas will be entitled to discovery, but only pursuant to the formal discovery procedures governing contested matters. In re Herron, 381 B.R. 184, 190 n. 9 (Bankr. D. Md. 2008) (noting that a when a debtor objects to a party's claim, each party "can seek information by discovery ... pursuant to Fed. R. Bankr. P. 9014, which incorporates Fed. R. Bankr. P. 7026 and 7028–7037 in contested matters").

Hylas should not be allowed to short-circuit the customary process, and its Rule 2004 Notice should therefore be quashed.

## IV.     THE NOTICE OF EXAMINATION SHOULD BE QUASHED AND A PROTECTIVE ORDER ISSUED BECAUSE THE RULE 2004 NOTICE AND DOCUMENT PRODUCTION IS UNDULY BURDENSOME AND HARRASSING.

Bankruptcy Rule 2004 does not permit an unlimited examination into any

topic. Examination thereunder may not be "'used for purposes of abuse or harassment' and it

'cannot stray into matters which are not relevant to the basic inquiry.'" *In re Table Talk*, 51

B.R. 143, 145 (Bankr. D.Mass. 1985) (*quoting In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr.

E.D.Wis. 1984)). C.

The Notice of Examination (attached hereto as Exhibit "A") makes no less than

80 separate requests for production dating as far back as 2008, and is unduly

burdensome and Harassing.

Hylas has not, to date, established any personal liability of Debtor Strother.

Hylas has not filed a Proof of Claim against Debtor Strother. Hylas does not yet know whether

they will ever be able to obtain a contractual liability claim against T3 Vistas, LLC or a pass-

through claim against Debtor Strother. Hylas has waived all claims against T3 Vistas,

LLC and Hylas will never have any claim or standing to pursue any claim thereunder.

Debtor Strother should not be forced to expend any funds in connection with discovery

sought by a party that may never have a right to pursue a claim it does not possess and may

never own, or has waived.

In addition, as noted above, in connection with the Pending Adversary

Proceeding, Hylas has already examined the Debtor and received voluminous

production.

Moreover, as noted above, on May 29th, a Hylas attended a section 341 Meeting of the

Creditors of Debtor Strother in which Hylas was given the opportunity to ask questions and did

ask questions with permission of the trustee until Hylas finished all of its questions.

Finally, in both the adversary proceeding and to the extent there is litigation with respect

to Hylas's claim, Hylas will have other opportunities as part of the formal discovery process.

Based on this, it appears that the only possible explanation for why Hylas is now seeking yet

another opportunity to examine the Debtor is as some sort of litigation strategy either to unduly

harass Debtor or to try and force the Debtor to immediately take certain positions with respect to

any Hylas's claim. This is a completely inappropriate use of Rule 2004.

See, e.g., Snyder, 52 F.3d at *1 (noting that Rule 2004 "[e]xaminations cannot be used to harass

or oppress the party"); In re Recoton Corp., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004)

("[C]ourts may limit, condition or forbid Rule 2004 discovery when it is designed to abuse or

harass.").

The 2004 Notice should therefore be quashed and a protective Order issued.

## **CONCLUSION**

WHEREFORE, Debtor Strother respectfully objects to and requests that this

Court enter an order quashing the Notice of 2004 Examination Duces Tecum issued by Hylas

pursuant to Bankruptcy Rule 2004, enter a protective order prohibiting Hylas from enforcing

that Notice, and pray that this Court for any other relief that this Court finds just and proper.

June 3, 2014

Respectfully submitted,

Richard Strother, pro se
340 Royal Poinciana Way Ste:317-203
Palm Beach, Florida 33480
561-818-3924
Ricstro33@gmail.com

**PLEASE TAKE FURTHER NOTICE** that this Motion was served in compliance with

the Bankruptcy Rules and Local Rule 9013-1. Under Local Rule 9013-1 any response to this

Motion must be filed with the Court and served upon Defendants at the address set forth above,

within twenty one (21) after the date of service stated in this Motion. Pursuant to Local

Bankruptcy Rule 9013-1(D), the failure to timely file and serve a written opposition may be

deemed by the Court to be consent to the granting of the relief requested in the Motion without

further notice or hearing.

### Certificate of Service

On this 3rd day of June, 2014, I certify that I served or caused to be served on the

other parties a true and accurate copy of this DEBTOR RICHARD STROTHER'S

OBJECTIONS TO AND MOTION TO QUASH NOTICE OF 2004 EXAMINATION,

MOTION FOR PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW

by first class mail. I further certify that I have conferred with opposing counsel in an attempt to

resolve these issues without a hearing.

Richard Strother

14

# EXHIBIT "A"

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

In re RICHARD T. STROTHER,

     Debtor

Docket Number 14-16671-PGH

Chapter 13

### NOTICE OF RULE 2004 EXAMINATION *DUCES TECUM*

Hylas Yachts, Inc. ("Hylas"), by the undersigned attorney, will examine the Debtor, Richard Strother, under oath on June 5, 2014, at 10:00 a.m. at The Law Offices of Geoffrey D. Ittleman, P.A., 110 S.E. 6th Street, Suite 2300, Fort Lauderdale, Florida 33301. The examination may continue from day to day until completed. If the examinee receives this notice less than 14 days prior to the scheduled examination date, the examination will be rescheduled upon timely request to a mutually agreeable time.

The examination is pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1, and will be recorded by videographic and stenographic means. The scope of the examination is as described in Fed. R. Bankr. P. 2004. Pursuant to Local Rule 2004-1 no order is necessary.

The Debtor must also bring with him to the examination the documents, electronically stored information, or objects described on the attached Schedule of Documents and must permit the inspection, copying, testing or sampling of the materials.

**I HEREBY CERTIFY** that a true copy of this notice was served on the examinee, attorney for examinee, the debtor, the attorney for the debtor and the trustee by E-mail on this the 1st day of May, 2014.

*In Re: Strother*
*Case No.: 14-16671 PGH*

Respectfully submitted,

THE   LAW   OFFICES   OF
GEOFFREY D. ITTLEMAN, P.A.
110 S.E. 6th Street, Suite 2300
Fort Lauderdale, Florida 33301
Tel: (954) 462-8340
Fax: (954) 462-8342
geoffrey@ittlemanlaw.com

By:     /s/Geoffrey Ittleman
        Geoffrey D. Ittleman, Esq.
        Fla. Bar No.: 377790

                -and-

        /s/ Jeffrey S. Baker
        Jeffrey S. Baker
        Two West Hill Place
        Suite 100
        Boston, MA 02114
        Phone: (617) 573-9505
        Fax: (617) 573-9503
        E-mail: bakerlaw@aol.com
        Admitted *Pro Hac Vice*

2

## SCHEDULE OF DOCUMENTS

1.   All documents that you used to prepare your schedules.

2.   All documents supporting or evidencing the entries on your Schedule A.

3.   All documents supporting or evidencing the entries on your Schedule B.

4.   All documents supporting or evidencing the entries on your Schedule C.

5.   All documents supporting or evidencing the entries on your Schedule D.

6.   All documents supporting or evidencing the entries on your Schedule E.

7.   All documents supporting or evidencing the entries on your Schedule F.

8.   All documents supporting or evidencing the entries on your Schedule G.

9.   All documents supporting or evidencing the entries on your Schedule H.

10.   All documents supporting or evidencing the entries on your Schedule I.

11.   All documents supporting or evidencing the entries on your Schedule J.

12.   All documents supporting or evidencing the entries on your statement of financial affairs.

13.   All documents supporting or evidencing the entries on your Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income.

14.   All documents supporting or evidencing the calculation of Line 5 of your Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income

15.   All documents supporting or evidencing the calculation of Line 6 of your Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income

16.   All documents supporting or evidencing the "consulting fees" identified on your statement of financial affairs.

3

*In Re: Strother*
*Case No.: 14-16671 PGH*

17.     All documents supporting or evidencing your capital gains or losses from 2008 to the present.

18.     Your federal tax returns from 2008 to the present with all schedules and K-1 forms.

19.     Your state tax returns from 2008 to the present with all schedules and K-1 forms.

20.     Your foreign tax returns from 2008 to the present with all schedules and K-1 forms.

21.     The federal tax returns of any entity in which you claim or have claimed an interest from 2008 to the present with all schedules and K-1 forms.

22.     The state tax returns of any entity in which you claim or have claimed an interest from 2008 to the present with all schedules and K-1 forms.

23.     The foreign tax returns of any entity in which you claim or have claimed an interest from 2008 to the present with all schedules and K-1 forms.

24.     Any and all documents that you have provided to an accountant at any time from 2008 to the present.

25.     The mutual releases identified on your Schedule B7-4(a).

26.     All documents evidencing your assertion on Line 37 of your Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income that the fees are "necessary for your health and welfare."

27.     All documents regarding or supporting the calculations of your proposed chapter 13 plan.

28.     All documents regarding or supporting Line 60a. of your Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income.

4

29.     All statements from all accounts in which you have deposited funds or had funds

held on your behalf at any time from 2008 to the present.

30.     All documents regarding or explaining the "+" on your summary of schedules.

31.     All documents regarding the "DIP Account" on line 2 of your schedule B.

32.     All documents regarding or evidencing Line 3 of your schedule B.

33.     Any lists, photographs, or other evidence of all televisions, computers,

entertainment systems, DVDs, CDs, VHS tapes, or any other media that you own or claim an

interest in.

34.     Any statements or other documents regarding the Roth IRA listed on Line 12 of

your Schedule B.

35.     Any statements or other documents regarding the TD Ameritrade account listed

on Line 12 of your Schedule B.

36.     Any documents regarding or evidencing your ownership of "25,000 Warrants of

CBRX in Debtor's Possesion" listed on Line 13 of your Schedule B.

37.     The bonds listed on Line 15 of your Schedule B.

38.     Any documents evidencing or constituting the "Notes plus interest" referred to on

Line 17 of your Schedule B.

39.     Any documents evidencing the IRS funds owed to you on Line 18 of your

Schedule B.

40.     Copies of the trust instruments listed on Line 20 of your Schedule B.

41.     Any documents evidencing or regarding the identity of the trustees of the "two

trusts" listed on Line 20 of your Schedule B.

*In Re: Strother*
*Case No.: 14-16671 PGH*

42. Any documents evidencing or regarding the name of the "two trusts" listed on Line 20 of your Schedule B.

43. Any documents evidencing or regarding the corpus of the "two trusts" listed on Line 20 of your Schedule B.

44. Any documents evidencing or regarding the income of the "two trusts" listed on Line 20 of your Schedule B.

45. Any documents evidencing or regarding the expenditures of the "two trusts" listed on Line 20 of your Schedule B.

46. All documents evidencing or regarding your ownership in, your acquisition of, and the current value of Flashcat Ventures, LLC.

47. All documents evidencing or regarding your ownership in, your acquisition of, and the current value of FlashScat Ventures, LLC.

48. All documents evidencing or regarding your ownership in, your acquisition of, and the current value of Fit4Sex, LLC.

49. All documents evidencing or regarding your ownership in, your acquisition of, and the current value of Fit in Your Jeans By Friday, LLC.

50. All documents evidencing or regarding your ownership in, your acquisition of, and the current value of T3 Vistas, LLC.

51. All documents evidencing or regarding your ownership in, your acquisition of, and the current value of any shares of Microanalytical Systems, Inc.

52. All documents evidencing or regarding your ownership in, your acquisition of, and the current value of any shares of Impact Systems, Inc.

6

53.    All documents evidencing or regarding your ownership of the medical equipment listed on Schedule B6-B-13.

54.    All documents evidencing or regarding the nature or value of your claims against T3 Vistas, LLC.

55.    All documents evidencing or regarding the nature or value of your claims against Hylas Yachts, Inc.

56.    All documents evidencing or regarding the nature or value of your claims against Benton Wilcoxon, et al.

57.    All documents evidencing or regarding the nature or value of your claims against Landlord, including the identity of the landlord.

58.    All documents evidencing or regarding the nature or value of your claims against Piero Navarro.

59.    All documents evidencing or regarding the nature or value of your claims against Motor Cars of Distinction.

60.    All documents evidencing or regarding the nature or value of your claims against Marshall Rosenbach.

61.    All documents evidencing or regarding your ownership in the "3 vehicles" listed on Line 35 of your Schedule B.

62.    All documents evidencing or regarding the make, model, year, condition, and series of the "3 vehicles" listed on Line 35 of your Schedule B.

63.    All documents evidencing or regarding the "secured interest" in the "3 vehicles" listed on Line 35 of your Schedule B.

7

*In Re: Strother*
*Case No.: 14-16671 PGH*

64.    All documents evidencing or regarding the "Litigation Proceeds membership" listed on Line 35 of your Schedule B.

65.    All documents indicating the basis for your election of state or federal exemptions.

66.    All documents regarding or evidencing the basis for each of your exemptions.

67.    All documents regarding or evidencing your tax liability to the Internal Revenue Service listed on your Schedule E.

68.    All documents regarding or evidencing the assertion that your tax liability to the Internal Revenue Service listed on your Schedule E is unliquidatd.

69.    All documents regarding or evidencing the basis on which you dispute your tax liability to the Internal Revenue Service listed on your Schedule E.

70.    All documents regarding or evidencing your tax liability to the New York State Department of Taxation listed on your Schedule E.

71.    All documents regarding or evidencing the assertion that your tax liability to the New York State Department of Taxation listed on your Schedule E is unliquidatd.

72.    All documents regarding or evidencing the basis on which you dispute your tax liability to the New York State Department of Taxation listed on your Schedule E.

73.    All documents regarding or evidencing the basis on which you dispute the debt of Good Samaritan Medical Center.

74.    All documents regarding or evidencing why you assert that the debts on your Schedule F are unliquidated.

75.    The basis for your assertion that "Image Consultants of South Florida" on your Schedule F provided "Medical Services."

8

*In Re: Strother*
*Case No.: 14-16671 PGH*

76.     All documents regarding or evidencing the debt owed to Troy Strother listed on

your Schedule F.

77.     All documents regarding or evidencing the debt owed to Erica Strother listed on

your Schedule F.

78.     All documents regarding or evidencing the "disputed fraud charges" listed on

your Schedule F.

79.     A copy of your current lease.

80.     All documents evidencing any royalties paid to you at any time from January 1,

2008, to the present.

9

76.     All documents regarding or evidencing the debt owed to Troy Strother listed on

your Schedule F.

77.     All documents regarding or evidencing the debt owed to Erica Strother listed on

your Schedule F.

78.     All documents regarding or evidencing the "disputed fraud charges" listed on

your Schedule F.

79.     A copy of your current lease.

80.     All documents evidencing any royalties paid to you at any time from January 1,

2008, to the present.

9